# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

—————————————————————————

OV LOOP, INC., a Delaware corporation,

        Plaintiff,

   -v-

MASTERCARD INCORPORATED, and
MASTERCARD INTERNATIONAL
INCORPORATED, both Delaware
corporations,

        Defendants.

: CIVIL ACTION NO. 7:23-cv-01773-CS
:
:
:   JURY TRIAL DEMANDED
:
:
:
:
:
:
:
:
;

—————————————————————————

## OV LOOP, INC.'S OPPOSITION TO MASTERCARD'S MOTION TO STAY PENDING *INTER PARTES REVIEW*

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND SUMMARY ................................................................1

II.   ARGUMENT ...........................................................................................4

    A.   No Issue Simplification: Only Weak IPRs and Conjecture ....................................4

        i.    The IPRs Will Not Likely Be Instituted Despite Mastercard's Blithe Assurances ...................................................................................4

        ii.   Most Judges in Most Districts Decline to Rule on Stay Motions Until the PTAB Has Acted on the IPR Petition ...........................................................6

        iii.  Institution Does Not Guarantee Simplification.........................................14

    B.   A Stay Would Be Terminally Prejudicial to OV Loop, as a Competitor ..............15

    C.   The Faith Mastercard Puts in its *Alice* Defense Cuts Against a Stay ...................20

III.  CONCLUSION.......................................................................................20

HOSIE RICE LLP

OV Loop, Inc.'s Opposition to
MasterCard's Motion to Stay

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Allure Energy Inc. v. Honeywell Intern., Inc*.,
    No. 1–15–CV–079 RP, 2015 WL 4207243 (W.D.T.X. Jul. 2, 2015)................................20

*CamelBak Products, LLC v. Zak Designs, Inc*.,
    No. 5:21-CV-05109, 2022 WL 2348676 (W.D. Ark. Jun. 29, 2022) ................................19

*CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc*.,
    No. 13–cv–05669 (NSR), 2014 WL 2854656 (S.D.N.Y. Jun. 20, 2014) ...... 3, 9-11, 16, 19

*CloudofChange, LLC v. Lightspeed POS, Inc.*,
    No. 6:21-CV-01102, 2023 WL 3467787 (W.D.T.X. May 15, 2023) ................................19

*Ellenby Tech., Inc. v. Fireking Security Grp.*,
    533 F.Supp.3d 656 (N.D. Ill. 2021) ....................................................................................8

*Goodman v. Samsung Electronics Am., Inc*.,
    No. 17-cv-5539 (JGK), 2017 WL 5636286 (S.D.N.Y. Nov. 22, 2017).............................9

*Grecia v. MasterCard, Inc.*,
    No. 15-cv-9059 (RJS), 2017 WL 11566955 (S.D.N.Y. Apr. 3, 2017) ...............4, 9, 11, 18

*HIP, Inc. v. Hormel Foods Corp.*,
    No. 18-615-CFC, 2019 WL 7667104 (D. Del. May 16, 2019)............................................7

*Intellectual Ventures II L.L.C. v. JP Morgan Chase & Co*.,
    No. 13 Civ. 3777 (AKH), 2014 WL 10919562 (S.D.N.Y Aug. 11, 2014)...................1, 13

*Invensas Corp. v. Samsung Electronics Co., Ltd*.,
    No. 17-1363-MN-SRF, 2018 WL 4762957 (D. Del. Oct. 2, 2018)....................................7

*Kannuu Pty Ltd. v. Samsung Electronics Co., Ltd.*,
    No. 19 Civ. 4297 (ER), 2021 WL 195163 (S.D.N.Y. Jan. 19, 2021) ...........................3, 10

*Karl Storz Endoscopy-Am., Inc. v. Synaptive Medical, Inc*.,
    No. 17-CV-5607 (JMF), 2018 WL 11220832 (S.D.N.Y. Aug. 8, 2018)..........................10

*KFx Medical, LLC v. Stryker Corp.*,
    No. 18-cv-01799-H-WVG, 2019 WL 2008998 (S.D. Cal. May 7, 2019) ..........................8

*Molo Design, Ltd. v. Chanel, Inc.*,
    No. 21-CV-01578 (VEC), 2022 WL 2135628 (S.D.N.Y. May 2, 2022)...........................11

*Multimedia Content Mgmt. LLC v. Dish Network L.L.C.*,
No. 6:18-CV-00207-ADA, 2019 WL 11706231 (W.D.T.X. May 30, 2019) ....................7

*Nanobebe US Inc. v. Mayborn (UK) Limited*,
No. 21-cv-08444 (JLR), 2023 WL 4993642 (S.D.N.Y. Aug. 4, 2023) ......................10, 11

*Nat'l Products Inc. v. Gamber-Johnson LLC*,
No. 20-cv-1108-wmc, 2021 WL 4168335 (W.D. Wisc. Aug. 4, 2021) ............................8

*Nielsen Co. (US) LLC v. TVSquared LTD*,
No. 23-CV-1581 (VSB), 2023 WL 4363005 (S.D.N.Y Jul. 6, 2023)................................19

*Nike, Inc. v. Lululemon USA Inc.*,
No. 22-cv-00082 (RA) (OTW), 2023 WL 2214884 (S.D.N.Y. Feb. 24, 2023) ...............11

*Novartis Pharma AG v. Regeneron Pharm., Inc.*,
582 F.Supp.3d 26 (N.D.N.Y 2022) ........................................................................3, 15, 19

*Novozymes North Am., Inc. v. Danisco US Inc.*,
No. 1:19-cv-01902-JDW, 2020 WL 12895020 (D. Del. Mar. 31, 2020) ....................3, 12

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
No. 2:18-cv-00390-RWS-RSP, 2019 WL 3826051 (E.D.T.X. Aug. 14, 2019) ....12, 14, 19

*Rensselaer Polytechnic Inst. v. Apple Inc.*,
No. 1:13–CV–0633 (DEP), 2014 WL 201965 (N.D.N.Y Jan. 15, 2014) .....................4, 13

*RetailMeNot, Inc. v. Honey Science LLC*,
No. 18-937-CFC-MPT, 2020 WL 373341 (D. Del. Jan. 23, 2020) ..................................12

*Robbins v. H.H. Brown Shoe Co., Inc.*,
No. 08 Civ. 6885 (WHP), 2009 WL 2170174 (S.D.N.Y. Jun. 30, 2009) ...........................4

*Rovi Guides, Inc. v. Comcast Corp.*,
No. 16-CV-9278 (JPO), 2017 WL 4876305 (S.D.N.Y Oct. 27, 2017)................................9

*Samsung Electronics Co., Ltd. v. Blaze Mobile, Inc.*,
No. 5:21-cv-02989-EJD, 2022 WL 103552 (N.D. Cal. Jan. 11, 2022) ..............................7

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018) ...............................................................................................11, 14

*Scorpcast, LLC v. Boutique Media Pty Ltd.*,
No. 2:20-cv-00193-JRG-RSP, 2020 WL 7631162 (E.D.T.X. Dec. 22, 2020) .............7, 12

*Sierra Pacific Indus. v. Kolbe & Kolbe Millwork Co., Inc.*,
No. 18-cv-853-wmc, 2019 WL 1924836 (W.D. Wisc. Apr. 3, 2019) ..............................15

*Skillz Platform Inc. v. Aviagames Inc*.,
No. 21-cv-02436-BLF, 2022 WL 1189882 (N.D. Cal. Apr. 21, 2022) ........................7, 18

*Sonrai Memory Limited v. Texas Instruments Inc*.,
No. 6:21-cv-1066-ADA-DTG, 2022 WL 2782744 (W.D.T.X. May 18, 2022) ...............15

*Stoneridge Control Devices, Inc. v. ZF North Am., Inc.*,
No. 2:22-CV-10289-TGB-EAS, 2023 WL 3359611 (E.D. Mich. May 10, 2023) .............8

*ThroughPuter, Inc. v. Microsoft Corp.*,
No. 2:22-cv-344-BJR, 2022 WL 2498754 (W.D. Wash. Jun. 1, 2022)..............................8

*Universal Secure Registry, LLC v. Apple Inc*.,
No. 7-585-CFC-SRF, 2018 WL 4486379 (D. Del. Sep. 19, 2018) ..............................3, 12

I.      **INTRODUCTION AND SUMMARY.**

Mastercard's Brief (ECF 43) is not faithful to the factual record.

Mastercard Incorporated and Mastercard International Incorporated (collectively, "Mastercard") first assure this Court that the requested stay will only cause "a slight delay." Mastercard's Brief ("Br.") at 1; *see also id.* at 8 ("minor delay").  Mastercard makes much of the crisp *inter partes* review ("IPR") schedule: 18 to 24 months.

This is inaccurate on the face of Mastercard's Brief.  In the last line of its Brief, Mastercard asks that the stay run "until final non-appealable decisions are issued in the IPRs." *Id.* at 11; *see also id*. at 2.  This means that the stay would **not** be limited to the 18–24-month PTAB schedule, but instead run through the conclusion of a full Federal Circuit appeal.  This is a delay of at least four to five years.  *See Intellectual Ventures II L.L.C. v. JP Morgan Chase & Co*., No. 13 Civ. 3777 (AKH), 2014 WL 10919562, at *3 (S.D.N.Y Aug. 11, 2014) ("But the IPR can take up to 18 months' time in the PTAB, and there may be two years of appellate review in the Federal Circuit, creating a three-year delay, or more …. [¶¶] The IPR process can take up to 24 months between the filing of a petition for review and the PTAB's issuance of a final decision.  [Citations omitted.]  The parties may then appeal the PTAB's decision to the Federal Circuit Court of Appeals, with all the attendant delays of the appellate process, perhaps another two years.  [Citation omitted.]  [¶] Thus, staying this case pending the PTAB's resolution of the IPRs could result in **substantial delay**") (emphasis added).  A five-year delay is hardly "slight" and "minor."

Second, Mastercard assumes its premise: that its IPRs "are strong" and will be instituted. *See* Br. at 6.  It says that, despite a 66% (and dropping) institution rate, these Mastercard IPRs will near certainly go forward.

HOSIE RICE LLP

OV Loop, Inc.'s Opposition to
MasterCard's Motion to Stay

We think not.  Here is what Mastercard has not told the Court: Mastercard's primary two prior art references, Collinge and Fiske, both claim an April 2, 2012 priority date.  The application that matured into the patent-in-suit, U.S. Patent No. 10,032,171 (the "'171 Patent"), was filed in August 2012.  While **filed** in August, the '171 inventor **conceived** of the invention far earlier—it takes real time to draft a complex patent.  Under the governing "first-to-invent" standard, OV Loop can "swear behind" both Collinge and Fiske if it can prove a conception date earlier than April 2012 and diligence in reducing the invention to practice.  OV Loop will prove just that, which will mean that Collinge and Fiske are not prior art as they are not **prior**.

Mastercard knows this, and basically admits as much by saying, given supposedly near "simultaneous" invention dates, the OV Loop patent is invalid as obvious.  *See* ECF 44-1 (IPR Petition No. 1) at 84 & ECF 44-2 (IPR Petition No. 2) at 87.  An obviousness challenge is much harder than a specific prior art challenge.  And, for that matter, Mastercard filed, prosecuted, and owns the Collinge application (and patent),[1] while Visa filed, prosecuted, and owns the Fiske patent.  Both Mastercard and Visa told the U.S. Patent & Trademark Office ("PTO") under oath that Collinge and Fiske captured **non-obvious**, novel, and patentable concepts.  Well, if not obvious for them, how can the OV Loop patent be obvious for OV Loop even earlier?  This is obviousness of convenience, not principle.  These IPRs are **weak**, and Mastercard knows as much.

Nor does Mastercard get the record right on prejudice.  OV Loop is, in fact, a direct competitor to Mastercard; if OV Loop's "super app" technology gets traction, this will threaten to weaken the Visa-Mastercard stranglehold on the domestic debit and credit card business.  *See* § II.B below; *see generally* Graylin Dec.  This is why Mastercard has refused to certify OV Loop

---

[1] Mastercard asserts the published Collinge patent application as prior art.  That application went onto issue as a Mastercard patent.  *See* Hosie Dec. Ex. 1.

over three long years; it would be like asking a manufacturer of internal combustion engines to help Elon Musk and Tesla.  A company is always free to say no, unless it has market power and says no to protect and preserve that market power, as is exactly the case here.  This is a case of classic predatory refusal to deal, and Mastercard's request for a five-year stay is just a perpetuation of this anticompetition driven boycott.

We will give Mastercard the first factor, stage of the proceedings.  This litigation is indeed early in its life.  *See Kannuu Pty Ltd. v. Samsung Electronics Co., Ltd.*, No. 19 Civ. 4297 (ER), 2021 WL 195163, at *10 (S.D.N.Y. Jan. 19, 2021) ("A case that is at the early stage of its lifespan generally favors granting a stay"); *but see Novozymes North Am., Inc. v. Danisco US Inc.*, No. 1:19-cv-01902-JDW, 2020 WL 12895020, at *1 (D. Del. Mar. 31, 2020) & *Universal Secure Registry, LLC v. Apple Inc*., No. 7-585-CFC-SRF, 2018 WL 4486379, *3 (D. Del. Sep. 19, 2018) (both finding the stage of the proceedings to disfavor a stay where the PTAB's institution decision was likely to come prior to intensive discovery and claim construction activity).[2]

But, the other two factors—simplification and prejudice—strongly counsel against a stay, at least until the Patent Trial & Appeals Board ("PTAB") institutes (or not) the pending IPRs.  *See* §§ II.A-B below.  And it is these two factors that dominate the analysis.  *See Novartis Pharma AG v. Regeneron Pharm., Inc*., 582 F.Supp.3d 26, 47 (N.D.N.Y 2022) ("In any case, there can be little doubt that simplification of the issues and prejudice to the opposing party are more important than the case's state of completion"); *see also CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc*., No. 13–cv–05669 (NSR), 2014 WL 2854656, at *4 (S.D.N.Y. Jun. 20, 2014) ("However, '[e]ven where a case is in its early stages of litigation, a stay should still be

---

[2] We also acknowledge that Mastercard timely filed its IPRs and thereafter promptly moved to stay.

denied if it offers limited potential to narrow the issues in the case and the non-moving party will suffer undue prejudice by the delay"); *Grecia v. MasterCard, Inc.*, No. 15-cv-9059 (RJS), 2017 WL 11566955, at *3 (S.D.N.Y. Apr. 3, 2017) ("[C]ourts generally decline to stay early-stage cases where the other two factors weigh in the opposite direction ….").

A stay is not warranted, and Mastercard has not, and cannot, carry its burden to show otherwise. *Rensselaer Polytechnic Inst. v. Apple Inc*., No. 1:13–CV–0633 (DEP), 2014 WL 201965, at *3 (N.D.N.Y Jan. 15, 2014) ("As the party seeking a stay, Apple bears the burden to demonstrate that such relief is warranted").

## II.   ARGUMENT.

### A.   No Issue Simplification: Only Weak IPRs and Conjecture.

#### i.   The IPRs Will Not Likely Be Instituted Despite Mastercard's Blithe Assurances.

Mastercard's first IPR petition turns on a reference known as Collinge (a Mastercard patent application) and another known as Fiske (a Visa patent), while its backup petition turns on a patent known as White and an application known as Mellqvist.  While Mastercard proclaims to this Court that its petitions are "strong," it fails to tell the Court that three of its four principal references were disclosed to the PTO during the '171's prosecution.  Put differently, the PTO was aware of these references and issued the '171 Patent over these references.  As to the fourth reference, Mastercard's own IPR petition shows that it is entirely cumulative of material the PTO did consider.  A petition that does not raise new art is anything but strong.  The staleness of Mastercard's references cuts against a stay.  *Cf.  Robbins v. H.H. Brown Shoe Co., Inc*., No. 08 Civ. 6885 (WHP), 2009 WL 2170174, at *2 (S.D.N.Y. Jun. 30, 2009) ("Here, two of the references were raised in the original prosecution and the three remaining references raise similar issues … that were considered and rejected by the U.S.P.T.O. …. [T]his factor [(simplification)]

weighs against granting a stay") (denying stay pending reexam).

Mastercard's Collinge reference was specifically raised by the PTO examiner during the '171 Patent's prosecution. The examiner raised Collinge not in an Office Action, but in the examiner's Notice of Allowability, where the examiner called out Collinge as "made of record" and "pertinent." *Compare* Hosie Dec., Ex. 2 ('171 File Wrapper Excerpt No. 1) at ExcerptPage010 ("[⁋]15 The prior art made of record but not relied upon herein but pertinent to Applicant's disclosure is listed in the enclosed PTO-892 [(Notice of References Cited)]") *with id.* at ExcerptPage014 ("Notice of References Cited …. US-20130262317-A1 … COLLINGE …. PTO-892"). Having explicitly passed on Collinge, it is clear the PTO examiner considered the '171 claims worthy of issuance over Collinge. This is **not** a case where the PTO failed to consider the now-asserted IPR invalidity reference. To the contrary, Collinge was squarely raised by the examiner, who then allowed the claims as novel and non-obvious.

As to Fiske, the second reference from Mastercard's first petition, Mastercard itself treats it as duplicative of Collinge. *Compare, e.g.*, ECF 44-1 at 26 ("The 'single use key' [of Collinge] is used by the user's mobile device to 'generate a payment cryptogram valid for a single payment transaction'") *with id.* at 35 ("In particular, Fiske teaches a user device that receives a single-use session key from an issuing bank for a single payment transaction"); *see also id.* at 84 ("*Collinge* and *Fiske* independently invented the solution claimed in the '171 Patent around the same time"). Since Fiske is cumulative of Collinge, its disclosures add nothing to the PTO's patentability analysis.

As to Mastercard's second petition, the principal references, White and Mellqvist, were disclosed to the examiner by OV Loop's predecessor, SimplyTapp. *See* Hosie Dec., Ex. 3 ('171 File Wrapper Excerpt No. 2); *see also* ECF 29-1 ('171 Patent) at Cover Page 2 (listing White and

Mellqvist as "References Cited" and Collinge as "cited by examiner").[3]  The '171 Patent issued over these references too.

Second, Mastercard's obviousness argument would be stronger had Mastercard not itself filed and prosecuted an application, Collinge, it now says anticipates and invalidates the OV Loop '171 Patent.  In its prosecution, Mastercard perforce had to (and did) swear under penalty of perjury that its application was non-obvious, novel, and fully patentable.  This was its position in 2012, its position through prosecution, and presumably its position today (or did it mislead the PTO?).  But, if Collinge were non-obvious and patentable for Mastercard, how could the '171 Patent—with its earlier priority date—be then obvious for OV Loop?[4]

With weak IPRs, and IPRs contradicted by Mastercard's sworn position on its patent application, denying a stay until the PTAB acts is not only sensible, it is just.

### ii.   Most Judges in Most Districts Decline to Rule on Stay Motions Until the PTAB Has Acted on the IPR Petition.

Mastercard argues that the "weight of recent precedent" supports a pre-IPR institution stay, and that two 2018 "changes in the law … reinforce the trend …."  Br. at 8.

This is not quite right.  Post-2018, pre-IPR institution stays are rarely granted in the Northern District of California, the District of Delaware, the Eastern District of Texas, or the Western District of Texas, four of the busiest patent dockets in the country, with sophisticated and experienced patent jurists.  Pre-institution, any benefit to be gained from an IPR is nothing

---

[3] "20110099079" is the application publication number for White.  *Compare* Hosie Dec., Ex. 3 ("20110099079") *with* Hosie Dec., Ex. 7 ("Patent No.: US 8,374,916 … Prior Publication Data US 2011/0099079 A1") *with* ECF 44-2 at 1 ("U.S. Patent No. 8,374,916 to White").  "20100153721" is the application publication number for Mellqvist.  *Compare* Hosie Dec., Ex. 3 ("20100153721") *with* ECF 44-2 at 1 ("U.S. Patent Publication No. 2010/153721 to Mellqvist").

[4] Mastercard challenged every claim in the long '171 Patent.  It did so such that it could argue that there would be significant overlap between this case and the IPRs.  But this is engineered overlap.

but conjecture.  *See, e.g., Skillz Platform Inc. v. Aviagames Inc*., No. 21-cv-02436-BLF, 2022 WL 1189882, at *4 (N.D. Cal. Apr. 21, 2022) ("The Court finds that simplification from the IPRs is purely speculative at this stage …. The Court finds that the pre-institution stage of the IPR proceedings weighs against IPR here …."); *Samsung Electronics Co., Ltd. v. Blaze Mobile, Inc.*, No. 5:21-cv-02989-EJD, 2022 WL 103552, at *4 (N.D. Cal. Jan. 11, 2022) ("'[T]he filing of an IPR request does not by itself simplify the issues in a case."  [Citation Omitted.] Accordingly, '**the majority of courts** ... have denied stay requests when the PTAB has not yet acted on the [IPR] petition for review'") (emphasis added); *HIP, Inc. v. Hormel Foods Corp.*, No. 18-615-CFC, 2019 WL 7667104, at *1 (D. Del. May 16, 2019) ("The second factor, whether a stay will simplify the issues, disfavors a stay at this time.  As noted, the IPR petition has not been instituted.  'Generally, the 'simplification' issue does not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for inter partes review'"); *Invensas Corp. v. Samsung Electronics Co., Ltd*., No. 17-1363-MN-SRF, 2018 WL 4762957, at *3 (D. Del. Oct. 2, 2018) ("**Courts within this district have generally held** that this factor [simplification] weighs against a stay when the PTAB has not yet decided whether to institute IPR proceedings") (emphasis added); *Scorpcast, LLC v. Boutique Media Pty Ltd.*, No. 2:20-cv-00193-JRG-RSP, 2020 WL 7631162, at *3 (E.D.T.X. Dec. 22, 2020) ("**The 'universal practice' in this District, as well as the practice of most district courts**, is to deny a motion for stay when the Board has not yet acted on a petition for IPR") (emphasis added); *Multimedia Content Mgmt. LLC v. Dish Network L.L.C.*, No. 6:18-CV-00207-ADA, 2019 WL 11706231, at * (W.D.T.X. May 30, 2019) ("At the time this Motion was filed, the IPR Petition had not been instituted or denied by the PTAB …. [S]ince there is no guarantee that the PTAB will grant institution, then there is no guarantee that granting a stay will simplify any issues in this

litigation ….").

Many other Judges in Districts across the country also typically deny pre-IPR institution stay requests.  *See, e.g.*, *Ellenby Tech., Inc. v. Fireking Security Grp.*, 533 F.Supp.3d 656, 665 (N.D. Ill. 2021) ("The Court's review of the body of available federal decisions on motions for pre-institution stays suggests that **the weight of authority** favors denying them without prejudice during the time frame before the PTAB's decision on IPR") (emphasis added); *ThroughPuter, Inc. v. Microsoft Corp.*, No. 2:22-cv-344-BJR, 2022 WL 2498754, at *1 (W.D. Wash. Jun. 1, 2022) ("Courts **routinely hold** that motions to stay filed before the PTAB has instituted IPR are premature, and that granting a stay at that juncture will not simplify the issues …. This Court agrees ….") (emphasis added); *KFx Medical, LLC v. Stryker Corp.*, No. 18-cv-01799-H-WVG, 2019 WL 2008998, at *2 (S.D. Cal. May 7, 2019) ("[A] stay of the action is not appropriate at this time.  Indeed, **the majority** of district courts 'have postponed ruling on stay requests or have denied stay requests when the PTAB has not yet acted on the petition for review'") (emphasis added); *Stoneridge Control Devices, Inc. v. ZF North Am., Inc.*, No. 2:22-CV-10289-TGB-EAS, 2023 WL 3359611, at *2 (E.D. Mich. May 10, 2023) ("Because it remains uncertain whether an IPR will be instituted at all, this factor [(simplification)] currently weighs against a stay"); *Nat'l Products Inc. v. Gamber-Johnson LLC*, No. 20-cv-1108-wmc, 2021 WL 4168335, at *1 (W.D. Wisc. Aug. 4, 2021) ("With more experience with the PTAB process, however, this court has since concluded a stay based solely on the filing of an IPR petition is generally premature at best").

In short, the **current** majority position is that, in most cases, pre-institution stay requests should be denied.

Even in the Southern District of New York, Mastercard overstates its case.

_Pre-2018:_

Pre-2018, Judges in this District followed the majority, and generally denied pre-institution IPRs.  For example, in _CDX Diagnostics_, Judge Roman denied a pre-institution stay request, reasoning that:

> At this time, 'the fact that the petitions have not yet been granted or denied makes it more difficult to predict whether the issues are likely to be simplified.' [Citation omitted.]  Some courts have recognized that the 'risk of delay is, on balance, prudent in light of the prospect of benefiting from the PTO's unique expertise on a highly complex topic.'  [Citation omitted.]  On the other hand, '[s]everal courts have concluded that the factors relevant to a stay analysis cannot be meaningfully addressed until the PTO determines whether to institute an IPR.' …. [¶] During the period of time between the filing of IPR petitions and the decision to institute proceedings, the Court and the parties are essentially treading water.  If the Court were to issue a stay, this case would be left languishing on the Court's docket with no progress being made.  [Citation omitted]  Therefore, although IPR proceedings may serve to narrow the issues in the pending litigation, it is unclear at this stage whether the PTO will institute proceedings on any or all of the petitions. Thus, the factor weighs slightly in favor of denying a stay.

2014 WL 2854656, at *3-4.

And in _Grecia_, Mastercard had its pre-institution stay request denied by Judge Sullivan. _See_ 2017 WL 11566955, at *2.

As for Mastercard's pre-2018 cases: _Goodman v. Samsung Electronics Am., Inc_., No. 17-cv-5539 (JGK), 2017 WL 5636286 (S.D.N.Y. Nov. 22, 2017) and _Rovi Guides, Inc. v. Comcast Corp_., No. 16-CV-9278 (JPO), 2017 WL 4876305 (S.D.N.Y Oct. 27, 2017), which Mastercard characterizes as "recent precedent" in its favor, Br. at 8, neither support Mastercard.  _Rovi_ involved post-institution, not pre-institution IPRs.  _See_ 2017 WL 4876305, at *2 ("[T]he PTAB instituted IPR proceedings as to those four patents").  And, while _Goodman_ involved pre-institution IPRs, the Court there was careful to stress the case's unique facts—a prior instituted petition which was dismissed owing to settlement that "mirror[ed]" a pending pre-institution

petition, *see* 2017 WL 5636286, at *1 & 3—and to explain that "**[o]rdinarily** the fact that the PTAB has not yet decided whether to institute review may weigh against issuing a stay." *Id*. at *3 (emphasis added).

<u>Post-2018:</u>

As for Mastercard's post-2018 cases, they do little to provide comfort that this District, as a whole, has abandoned its prior precedent in favor of a minority viewpoint.

*Karl Storz Endoscopy-Am., Inc. v. Synaptive Medical, Inc*., No. 17-CV-5607 (JMF), 2018 WL 11220832 (S.D.N.Y. Aug. 08, 2018), involved post-institution, not pre-institution IPRs. *See* at *1 ("the PTAB granted Synaptive's Petition, instituting IPR for every claim ….").

Not only was *Kannuu Pty* a post-institution case, *see* 2021 WL 195163*,* at *1, but it suggests that the pre-/post-institution status of the IPR still makes a difference in this District: "Kannuu argues that Samsung could have alerted the Court of its intent to request a stay much earlier than it did. **However, doing so would have been premature, as it was 'unclear at [that] stage whether the [PTAB] [would] institute** proceedings on any or all of the petitions.'" *Id*. at 11 *citing CDX Diagnostics* (emphasis added).

Indeed, in *Nanobebe US Inc. v. Mayborn (UK) Limited*, No. 21-cv-08444 (JLR), 2023 WL 4993642 (S.D.N.Y. Aug. 4, 2023), which post-dates Mastercard's most recent case (*Nike*) and which Mastercard does not cite, Judge Rochon suggests that whether an IPR's status is pre- or post-institution continues to make an important difference in the stay calculus. *See id*. at *3 ("However, the IPR proceeding has now been instituted, which has changed the landscape and this Court's assessment") & 5 ("While the Court recognizes that it was reluctant to slow the proceedings … once … IPR proceedings were initiated based on findings regarding a reasonable likelihood of unpatentability of many of the very claims in this case, the Court's assessment

shifted") (granting post-institution stay); *see also Nanobebe US Inc. v. Mayborn (UK) Limited*, No. 21-cv-08444 (JLR), ECF No. 72 at 2 (S.D.N.Y. Feb 6, 2023) (Hosie Dec., Ex. 4) ("The Court will evaluate any motion to stay that is filed by Nanobebe but notes that, at this point, **an uninstituted IPR petition request would not seem to support a stay** of an action between two direct competitors") (emphasis added).

As to *Molo Design, Ltd. v. Chanel, Inc.*, No. 21-CV-01578 (VEC), 2022 WL 2135628 (S.D.N.Y. May 2, 2022), there, a pre-institution stay was granted.  While the Court found that the simplification factor there weighed in favor of a stay, the Court noted a lack of uniformity on the issue, and did not describe a District or Second Circuit wide trend.  *See id*. at 2-3.

That leaves *Nike, Inc. v. Lululemon USA Inc*., No. 22-cv-00082 (RA) (OTW), 2023 WL 2214884 (S.D.N.Y. Feb. 24, 2023) as Mastercard's sole support.  In *Nike*, the patentee did underscore cases that held that the stay factors could not be meaningfully assessed prior to institution.  *Id*. at *2.  And, the Court did state that that "view does not appear to the majority position in this Circuit," citing two Eastern District cases, in addition to *Goodman* and *Molo* (which as explained above do not support such an observation).  *Id*.  The *Nike* court then went on to distinguish this District's *CDX Diagnostics* and *Grecia* opinions, on the basis that they pre-date "two crucial changes to the law governing IPR proceedings in 2018."  *Id*.  With all due respect to the *Nike* court, its "2018 change" analysis is not persuasive.

The two changes in question are the Supreme Court's decision in *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018), which required the PTAB to institute (or deny) on all challenged claims opposed to a subset of claims, and the PTAB's move to the same claim construction standard applied by the District Courts.  The *Nike* court does not offer any analysis of its own as to why these two changes make a difference.  Instead, the Court cites a District of Delaware case:

HOSIE RICE LLP
11
OV Loop, Inc.'s Opposition to
MasterCard's Motion to Stay

*RetailMeNot, Inc. v. Honey Science LLC*, No. 18-937-CFC-MPT, 2020 WL 373341 (D. Del. Jan. 23, 2020).  But, as explained above, the District of Delaware still applies the majority rule, whereby, in general, pre-institution status weighs against a stay.  More, *RetailMeNot* was read by a Delaware Judge to be cabined to its "unique facts:"

> The Court is not persuaded by Defendants' argument that the IPR Petition has the 'unique facts' like those in *RetailMeNot* that favor a stay …. *RetailMeNot* is distinguishable from this case because the Court in *RetailMeNot* found that the 'unique facts of [that] case [made] institution more probable.'  *Id*.  Notably, the Court found that the probability of institution was greater in that case in light of the patent examiner's rejection of the defendant's related 'co-pending continuation application' based upon the same arguments.

*Novozymes*, 2020 WL 12895020, at *2.  There are no such "unique facts" here; to the contrary, as explained above, the PTO issued the '171 Patent over Mastercard's art.  *See* § II.A.i.

Further, Courts have found that the Supreme Court's *SAS* opinion cuts **against**, not for, granting stays.  *See Universal Secure Registry*, 2018 WL 4486379, at *3 ("The Supreme Court's recent decision in [*SAS*] supports the court's conclusion [that pre-institution weighs against a stay] on this [simplification] factor because it guarantees that the PTAB's decision to institute Apple's petitions will be a 'binary choice'") (denying pre-institution stay); *Scorpcast*, 2020 WL 7631162, at *3 ("[R]ecent events [(*SAS*)] have changed the stay analysis so that Defendants may need to do more than just show that the IPR petition has been instituted") (denying pre-institution stay); *Peloton Interactive, Inc. v. Flywheel Sports, Inc*., No. 2:18-cv-00390-RWS-RSP, 2019 WL 3826051, at *2 (E.D.T.X. Aug. 14, 2019) ("[I]nstitution decisions … are less helpful in indicating that IPRs will result in a simplification of issues than they would have been before *SAS*") (denying post-institution stay).

And, at least pre-institution, that the PTAB now applies the same claim construction standard should not change the stay inquiry.  Pre-institution, the Court gaining any beneficial

PTAB analysis, including any claim construction analysis, is entirely speculative. *See*

*Rensselaer*, 2014 WL 201965, at *7-8 ("I find that whether any issues attendant to this litigation

may [be] simplified through the IPR process is speculative primarily in light of the fact that the

PTO has yet to accept or deny Apple's petition for further review"); *see also id.* at *6. This fact

is true no matter what standard the PTAB applies. For example, take this case. Here,

Mastercard does not advance **any** claim constructions through its IPR petitions. *See* ECF 44-1 at

24-25 & ECF 44-2 at 21. Instead, Mastercard says "ordinary and customary meaning" governs

all terms, and further adds that a single term is "potentially subject to at least two alternative

constructions," but that the PTAB need not reach this potential claim construction issue because

Mastercard allegedly prevails under either construction. *See id*. Accordingly, today, post-

standard change, with OV Loop's preliminary response three months out, and the PTAB's

preliminary views six months out, the Court is still left to wonder what claim construction issues

if any an instituted IPR may reach.

      OV Loop should not be deprived of the benefits afforded to all civil litigants under the

Federal Rules of Civil Procedure based on pure conjecture. As Judge Hellerstein concluded in

denying a stay request where only one of twelve petitions had yet resulted in an institution:

> Staying this case pending the resolution of the petitions for IPR would have only a
> speculative streamlining effect, and would present JPMC with an unfair tactical
> advantage.
> ***
> There is a great temptation on the part of a district judge, overseeing a large and
> diverse docket, to accept the promise of a stay and move on to other parts of his
> docket. But as pointed out here, patent claims, like all cases, deserve the same
> quality of treatment as Federal Rule of Civil Procedure 1 promises: a 'just,
> speedy, and inexpensive determination.' …. [¶] The case before me will end in
> less than a year. It makes no sense for me to delay its resolution further by
> waiting, for four years, on the intercession of another forum with only a limited
> jurisdiction over these claims."

*Intellectual Ventures*, 2014 WL 10919562, at *4-5.

### iii.    Institution Does Not Guarantee Simplification.

Even if Mastercard's IPRs are instituted it does not follow that efficiency will ensue.

First, post-*SAS*, with the PTAB having to institute on all challenged claims and not just the ones it believes have a reasonable likelihood of success, the odds that at least some of the challenged claims are upheld post-institution has increased.

Second, the issues that can be raised and decided in an instituted IPR are extremely limited compared to the issues in this case.  The PTAB can only address Section 102 and 103 invalidity challenges (anticipation and obviousness) and even then only based on patents and printed publications.  Before this Court, Mastercard is likely to at least raise Section 112 invalidity challenges (written description, undue experimentation, and indefiniteness) in addition to its already known Section 101 invalidity challenge (subject matter ineligibility).  The PTAB cannot address these invalidity grounds.  Mastercard may also mount system art Section 102/103 challenges or unenforceability challenges (for example, inequitable conduct), which are matters any PTAB decision will also leave unaddressed.  The PTAB will also not pass on questions pertaining to infringement, willfulness, and damages, for example.  To take a firmer example, even if the PTAB construes a particular term in a final written decision upholding all or some of the claims, such that the Court gains the benefit of the PTAB's analysis as to that one term, the parties' Section 112, Section 101, and infringement disputes may necessitate the construction of an entirely different set of terms, terms the PTAB never reached nor had reason to reach.

Accordingly, where the scope of the litigation and IPR are largely non-commensurate, many Courts find that the simplification factor weighs against a stay.  *See, e.g., Peloton*, 2019 WL 3826051, at *2 ("Third, Flywheel indicated at the August 12, 2019 hearing that it intended to present several additional invalidity theories if the instituted IPR proceedings are not fully

successful, so the scope of the invalidity contentions is significantly broader than the invalidity

theories presented for IPR proceedings.  Each of these reasons suggest that this factor weighs

against a stay") & *Sierra Pacific Indus. v. Kolbe & Kolbe Millwork Co., Inc.*, No. 18-cv-853-

wmc, 2019 WL 1924836, at *2 (W.D. Wisc. Apr. 3, 2019) ("Fourth, even if the Patent Office

institutes review, 'it is not clear that the inter partes review would address the issues that will be

determinative in this case' because 'validity is only one of many issues that may be raised in a

patent case'"); *cf. Novartis*, 582 F. Supp. 3d at 47-48 ("Many courts in similar positions have

held that even if it is possible that the issues will be simplified by a complete dismissal during an

inter partes review, a stay is typically not warranted if there is a potential that only one issue

among many will be resolved. [Citation omitted.]  The Court finds that logic persuasive ….

though some simplification may result … this factor only slightly favors [a stay]").

 Third, since IPR proceedings can add to a patent's prosecution history, the Court may

find that IPRs complicate issues, rather than simplify.  *See Sonrai Memory Limited v. Texas

Instruments Inc*., No. 6:21-cv-1066-ADA-DTG, 2022 WL 2782744, at *2 (W.D.T.X. May 18,

2022) ("The Court finds that any likelihood that a stay will result in simplifying the case before

the Court is too speculative.  In the Court's experience and because the IPR proceedings add to

the intrinsic record of a patent, IPR proceedings do not simplify issues in district court cases").

 Here, pre-institution, with a known Section 101 argument (subject matter ineligibility)

that Mastercard says is terminal, and petitions based on stale prior art references that OV Loop

will swear behind, the simplification factor strongly weighs against a stay.

### B. A Stay Would Be Terminally Prejudicial to OV Loop, as a Competitor.

 On prejudice, Mastercard repeats its point that it filed promptly, and that "recent" cases

favor stays even before the PTAB acts on the petition.  As explained above, the pre-institution

status of the IPR petitions strongly disfavor a stay, and OV Loop does not dispute the timeliness of Mastercard's filings.

That takes us to the real prejudice issue here: whether the parties are competitors in the marketplace. *See CDX Diagnostics*, 2014 WL 2854656, at *4 ("'An important factor in determining if a stay will prejudice the plaintiff is whether the parties are direct competitors,' [citation omitted], because 'there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill'"). Mastercard says that OV Loop is not a competitor. *See* Br. at 10-11.

This is simply incorrect. Mastercard and Visa alike fear emerging technologies that might "disintermediate" their business, i.e., break or loosen their stranglehold on the credit and debit markets. Indeed, this is explicit in Mastercard's own SEC filings:

> Competition[:] **We face a number of competitors both within and outside of the global payments industry**…. As the global payments industry becomes more complex, **we face increasing competition from alternative payments systems and emerging payments providers**, both for customers and data. **Many of these providers**, who in many circumstances can also be our partners or customers, **have developed payments systems focused on online activity in e-commerce and mobile channels** (in some cases, expanding to other channels), and may process payments using in-house account transfers, real-time account-based payments networks or global or local networks. **Examples include digital wallet providers** (such as Paytm, PayPal, **Alipay** and Amazon), point of sale financing/buy-now-pay-later providers (such as Klarna, Affirm and Afterpay), mobile operator services, mobile phone-based money transfer and microfinancing services (such as M-PESA) and handset manufacturers.
>
> ***
>
> Competition and Technology[:] …. **Disintermediation from stakeholders** both within and outside of the payments value chain could harm our business …. Although we partner with fintechs and technology companies (such as digital players and mobile providers) that leverage our technology, platforms and networks to deliver their products, **they could develop platforms or networks that disintermediate us from digital payments and impact our ability to compete in the digital economy**. These companies may also develop products or services that compete with our customers within the payments ecosystem and, as

a result, could diminish demand for our products and services.

Hosie Dec., Ex. 5 (Excerpts of Mastercard Inc.'s December 31, 2022 10K); *see also* Hosie Dec.,

Ex. 6 (Excerpts of Visa Inc., Form 10-K for Fiscal Year ended Sep. 30, 2022) at 13-14

("COMPETITION[:] …. Digital Wallet Providers: …. While digital wallets can help drive Visa

volumes, they can also be funded by non-card payment options"), 21-22 ("Business Risks[:] We

face intense competition in our industry …. Some of our competitors, including … certain

alternative payments systems **like Alipay and WeChat Pay**, operate closed-loop payments

systems, with direct connections to both merchants and consumers …. We also run the risk of

disintermediation due to factors such as emerging technologies and platforms, including mobile

payments …) & 26 ("Technology and Cybersecurity Risks[:] …. The global payments industry

is undergoing significant and rapid technological change, including increased proliferation of

mobile …. If we or our partners fail to adapt and keep pace with new technologies in the

payments space in a timely manner, it could harm our ability to compete ….").

OV Loop has precisely such a disruptive technology.  To explain, in many countries other

than here, companies and individuals can use a "super app" to conduct online business, including

buying goods.  For example, WeChat is a super app based in China.  *See* Graylin Dec., ¶¶ 3 & 5-

6.  It has an 80% market there.  Another Chinese super app is Alipay.

OV Loop is building such a super app for the U.S. market.  *See* Graylin Dec., ¶¶ 3, 4 & 7.

Its C.E.O. and founder is a storied fintech entrepreneur.  He has built and sold four prior

companies, with the last one—LoopPay—sold to Samsung for $318 million to create Samsung

Pay.  *See* ECF 1 (Complaint), ¶¶ 29-30 & 36-51.

Over the past four years, OV Loop and its 40 plus employees have built a terrific super

app platform and a forward-facing consumer device, the OV Loop "Valet."  *See* ECF 1, ¶¶ 44-

51; *see also* https://www.youtube.com/watch?v=O34l9tVRiG8 (video on OV Loop's OV Valet).

Over the past three years, OV Loop has tried to secure Mastercard certification to allow OV Loop customers to use Mastercard cards on OV Loop's platform.  Through a series of what are now obviously pretextual objections, Mastercard refused to certify OV Loop, shutting out OV Loop business.  *See* Graylin Dec., ¶¶ 8-12; *see also* ECF 1, ¶¶ 68-73.

Why?  Because Mastercard will not enable a competitor to compete.  This is not illegal **unless** the actor has market power, and says no to protect or expand that market power.  Mastercard has market power and it is a defendant in many pending cases alleging it abused that power.  This is a classic case of Sherman Section II refusal to deal.

Mastercard's stay motion is simply a perpetuation of its illicit anticompetitive conduct.  Here, where OV Loop is a start-up in competition with a major card network, hindering OV Loop's ability to do business, the prejudice of a stay is definite and substantial.  *See Grecia*, 2017 WL 11566955, at *3 ("[I]t appears that Grecia and MasterCard may be direct competitors in the marketplace … in such circumstances, courts often 'presume that a stay will prejudice the non-movant'"); *Skillz Platform*, 2022 WL 1189882, at *6 ("'Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages'").

Mastercard's request for an indefinite stay pending appeal, *see* § I above, only serves to compound the significant prejudice OV Loop would suffer:

> [T]here can be no doubt that Novartis and Regeneron are direct competitors, which counsels strongly in favor of finding prejudice …. [¶] On top of that, Regeneron explicitly requests that the Court stay … until any appeals of the inter partes review to the Federal Circuit have concluded …. Given that court's heavy caseload, it would not come as a surprise for that process to take more than another year to come to an end.  In total, then, a stay while the PTO examines the validity … could tack on at least another two or three years to this case.  Courts routinely find stays of multiple years to be long enough to result in prejudice ….

18                 OV Loop, Inc.'s Opposition to
                                                                      MasterCard's Motion to Stay

[¶] In other words, upon careful review, though there is at least a chance that the issues in the '631 Patent case could be simplified if the Court sat until the PTO had its say, that possibility is not enough to outweigh the near-certainty of prejudice to Novartis if the stay is granted.

*Novartis*, 582 F. Supp. 3d at 48; *see also Peloton*, 2019 WL 3826051, at *4 ("This is a considerable delay [i.e., the delay that would result from a likely appeal], and it suggests that a stay is not appropriate in this case, especially considering the relationship of the parties and the other facts"); *cf. CloudofChange, LLC v. Lightspeed POS, Inc.*, No. 6:21-CV-01102, 2023 WL 3467787, at *2 (W.D.T.X. May 15, 2023) ("[[S]ome factors may diminish [the risk of loss of valuable evidence], like where the requested stay is of a brief and definite duration.' [Citation omitted.] …. [T]he mitigating factor is absent here …. not [even] taking into account possible [IPR final written decision] appeal time").[5]

    Mastercard's brief concludes with this blithe assertion: "granting a stay is unlikely to

---

[5] Mastercard may argue that prejudice to OV Loop is undercut by the length of time it took it to institute suit.  But OV Loop had good reason to delay.  As explained, its business is seriously hampered by lack of certification from Mastercard.  Thus, it tried hard to get that certification—suing the entity it needs to certify was a last resort.  *Cf. CamelBak Products, LLC v. Zak Designs, Inc.*, No. 5:21-CV-05109, 2022 WL 2348676, at *3 (W.D. Ark. Jun. 29, 2022) ("In the years prior to bringing this lawsuit, CamelBak was attempting to amicably resolve this dispute …. The Court will not fault CamelBak for pursing alternatives to litigation"); *CloudofChange*, 2023 WL 3467787, at *2-3 (finding prejudice weighed against a stay over defendant's argument that the patentee "sat on its rights").  Mastercard may also argue that the lack of a preliminary injunction motion weighs against a stay.  But OV Loop was justified in not wasting its or the Court's resources on such a motion where critical infringement related documents, including key Mastercard specifications, *see* ECF 1, ¶¶ 59-62, 67 & p. 21 n.2, are non-public, and so not available absent discovery.  *Cf. CDX Diagnostics*, 2014 WL 2854656, 4-5 ([T]he Court will not hold against [the patentee] its decision to spare the parties more litigation [in the form of a motion for preliminary injunction]"); *Nielsen Co. (US) LLC v. TVSquared LTD*, No. 23-CV-1581 (VSB), 2023 WL 4363005, at *2 (S.D.N.Y Jul. 6, 2023) ("'The fact that Plaintiff did not seek a preliminary injunction does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in the case'") (non-IPR stay case).  Mastercard may further argue an alleged "security issue" as a pretext for its anticompetitive conduct in refusing to certify OV Loop.  OV Loop's solution does not present any heightened risk over the likes of Samsung Pay and Apple Pay, for example, which Mastercard has certified to work on its network.  There is no security issue.  *See* Graylin Dec., ¶ 9.

HOSIE RICE LLP              19               OV Loop, Inc.'s Opposition to

unduly prejudice OV Loop." Br. at 11. Come now—a five-year delay—coupled with an anticompetitive refusal to deal? This is inherently unduly prejudicial, perhaps terminally prejudicial. Which is, of course, Mastercard's real goal.

The prejudice factor strongly weighs against a stay. *Cf. Allure Energy Inc. v. Honeywell Intern., Inc*., No. 1–15–CV–079 RP, 2015 WL 4207243, at *2 (W.D.T.X. Jul. 2, 2015) ("[A]ccording to Plaintiff, every day Defendant is allowed to continue its alleged misconduct further compromises Plaintiff's ability to compete and establish a significant presence in a nascent market …. If the PTO does grant such review, it could be a full year thereafter, if not longer, before the PTO issues its determinations. [Citation omitted.] In light of the circumstances and the parties' relative resources, the Court is of the opinion that delaying this lawsuit for such period of time would afford Defendant a tactical advantage while greatly prejudicing Plaintiff").

### C.   The Faith Mastercard Puts in its *Alice* Defense Cuts Against a Stay.

Here, Mastercard sought leave to file a 12(b)(6) motion on Section 101 (*Alice*) grounds prior to raising a stay. *Compare* ECF 29 (Mastercard's May 30, 2023 Letter to the Court) *with* Br. at 10 ("Mastercard informed the Court and OV Loop of its intention to file the motion to stay during the June 28, 2023 pre-motion conference"). And here, Mastercard asserts that its *Alcie* motion is case dispositive—that if granted every '171 claim will be invalidated. *See* ECF 29 at 2. Given the great weight Mastercard puts on an issue the PTAB cannot address, *see* § II.A.iii above, at the very least, its *Alice* motion should go forward, while the parties and the Court await the PTAB's institution decisions.

### III.   CONCLUSION.

The balance of the factors and the totality of the circumstances strongly weigh against a

stay.  OV Loop respectfully request that the Cout deny Mastercard's stay motion in its entirety.

Dated: September 20, 2023

Respectfully submitted,

By: */s/ Spencer Hosie*

Spencer Hosie (*pro hac vice*)
(CA Bar No. 101777)
Diane S. Rice (*pro hac vice*)
(CA Bar No. 118303)
Darrell R. Atkinson (*pro hac vice*)
(CA Bar No. 280564)
**HOSIE RICE LLP**
505 Sansome Street, Suite 1575 San
Francisco, CA 94111
Tel: (415) 247-6000
Fax: (415) 247-6001

*Attorneys for Plaintiff OV LOOP, INC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of September 2023, a copy of the foregoing: OV

LOOP, INC.' OPPOSITION TO MASTERCARD'S MOTION TO STAY PENDING *INTER*

*PARTES* REVIEW, was filed with the Clerk of the Court, Southern District of New York and

will be sent electronically to the registered participants as identified on the Notice of Electronic

Filing (NEF).

*/s/ Spencer Hosie*
Spencer Hosie