UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
OV LOOP, INC.,

                              Plaintiff,

    - against -

MASTERCARD INCORPORATED, and
MASTERCARD INTERNATIONAL
INCORPORATED,

                             Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-1773 (CS)

Appearances:

Spencer Hosie
Diane S. Rice
Darrell R. Atkinson
Hosie Rice LLP
San Francisco, California
*Counsel for Plaintiff*

Robert C. Scheinfeld
Jennifer C. Tempesta
Baker Botts L.L.P
New York, New York

Eliot D. Williams
Baker Botts L.L.P
Washington, DC
*Counsel for Defendants*

Seibel, J.

On March 1, 2023, Plaintiff OV Loop, Inc. ("OV Loop") commenced this action alleging that Defendants Mastercard Incorporated and Mastercard International Incorporated (collectively, "Mastercard") – through use of Mastercard's cloud-based payments systems and associated instrumentalities – infringed a patent owned by OV Loop: U.S. Patent No. 10,032,171 ("the '171 Patent"). (*See* ECF No. 1 ("Compl.") at ¶¶ 75-89.) The '171 Patent

claims a method and system for using a mobile device, and a remotely hosted digital credential rather than a physical chip, to securely authorize point-of-sale transactions.  (*See* ECF No. 29-1 at 28-29, 52-55.)[1]  As far as the Court understands, the patent claims innovations regarding secure authorization of a person's identity when making a retail or online purchase, utilizing different methods of electronic encryption in mobile wallets.  (*See id.*)

On June 26, 2023, the Court held a conference with the parties and directed them to confer to determine a motion schedule for Mastercard's proposed motion to dismiss and motion to stay pending *inter partes* review ("IPR").  (*See* Minute Entry dated June 28, 2023).  The Court adopted the parties' proposed schedule, which called for the motion to stay to be litigated first, (*see* ECF Nos. 39, 41), and Mastercard filed two IPR petitions with the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("PTO") on September 6, 2023, (ECF No. 44 ("Tempesta Decl.") ¶¶ 2-3).  That same day, Mastercard filed a motion to stay this action pending its two IPR petitions, (ECF No. 42), which OV Loop opposes, (ECF No. 45 ("OV's Opp.")).   For the reasons discussed below, Mastercard's motion is GRANTED and this action is stayed for the duration of any IPR proceedings before the PTAB involving the '171 Patent.

I.      **LEGAL STANDARD**

By implementing the Leahy-Smith America Invents Act ("AIA"), "'Congress sought to establish a more efficient and streamlined patent system . . . and limit unnecessary and counterproductive litigation costs and to create a timely, cost-effective alternative to litigation.'" *Synkloud Techs., LLC v. Cartessa Aesthetics, LLC*, No. 21-CV-4423, 2022 WL 1046261, at *1

---

[1] For ease of reference, all citations to ECF No. 29-1 refer to page numbers set by the Court's Electronic Case Filing ("ECF") system.

(E.D.N.Y. Apr. 6, 2022) (quoting *CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-5669, 2014 WL 2854656, at *2 (S.D.N.Y. June 20, 2014)).[2]  Under the AIA, IPR petitions must be filed within one year of the petitioner being served with a complaint that alleges patent infringement.  35 U.S.C. § 315(b).  The PTAB may institute IPR if there is a "reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  35 U.S.C. § 314(a); *see Synkloud*, 2022 WL 1046261, at *1.  A decision whether to institute IPR "must be made within 3 months of the patent holder's response to an IPR petition or 3 months from the last day the patent holder could respond to the petition."  *Synkloud*, 2022 WL 1046261, at *1 (citing 35 U.S.C. § 314(b)).  Additionally, the "final decision must be made within 1 year of the decision to commence IPR," which can be extended for an additional 6 months if good cause is shown.  *Id.* (citing 35 U.S.C. § 316(a)(11)).

"The ability to stay cases is an exercise of a court's inherent power to manage its own docket."  *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016); *see, e.g.*, *Nike, Inc. v. Lululemon USA Inc.*, No. 22-CV-82, 2023 WL 2214884, at *1 (S.D.N.Y. Feb. 24, 2023) ("A federal district court has inherent power to stay an action pending *inter partes* review."); *Molo Design, Ltd. V. Chanel, Inc.*, No. 21-CV-1578, 2022 WL 2135628, at *2 (S.D.N.Y. May 2, 2022) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket.").

Courts consider three factors when evaluating whether to grant a stay pending IPR: "(1) whether a stay will simplify the issues in question and trial of the case; (2) the stage of the proceedings; and (3) whether a stay will prejudice the nonmoving party."  *Nike*, 2023 WL

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

2214884, at *1; *see, e.g.*, *Murata*, 830 F.3d at 1361; *Grecia v. MasterCard, Inc.*, No. 15-CV-9059, 2017 WL 11566955, at *2 (S.D.N.Y. Apr. 3, 2017); *CDX Diagnostics*, 2014 WL 2854656, at *2. While various district courts debate which of the three factors is the most important, "there can be little doubt that simplification of the issues and prejudice to the opposing party are more important than the case's state of completion." *Novartis Pharma AG v. Regeneron Pharms., Inc.*, 582 F. Supp. 3d 26, 46-47 (N.D.N.Y. 2022). These three factors are nonexclusive, and ultimately "the overarching consideration of the circumstances in their totality governs." *Nike*, 2023 WL 2214884, at *1 (citing *Grecia*, 2017 WL 11566955, at *2); *see Wiesel v. Apple Inc.*, No. 19-CV-7261, 2021 WL 5038764, at *1 (E.D.N.Y. Oct. 29, 2021). The movant bears the burden to show that a stay is warranted. *See Nike*, 2023 WL 2214884, at *1 (citing *Goodman v. Samsung Elecs. Am, Inc.*, No. 17-CV-5539, 2017 WL 5636286, at *2 (S.D.N.Y. Nov. 22, 2017)).

## II.   DISCUSSION

### A.   The Totality of the Circumstances Supports a Stay Pending IPR

OV Loop concedes that the case's status weighs in favor of granting a stay, given the early stage of the proceedings. (*See* OV's Opp. at 3 (citing *Kannuu Pty. Ltd. v. Samsung Elecs. Co.*, No. 19-CV-4297, 2021 WL 195163, at *10 (S.D.N.Y. Jan. 19, 2021), *aff'd* 15 F.4th 1101 (Fed. Cir. 2021).) Considering the two remaining factors under the totality of the circumstances, as discussed below, the Court concludes that an IPR proceeding, if instituted by the PTAB, will simplify the issues and that a stay pending IPR will not unduly prejudice OV Loop. Thus, the Court finds that all three factors weigh in favor of granting a stay.

### 1.  The IPR Proceedings May Simplify the Issues

IPR may simplify patent litigation.  *See, e.g.*, *Nike*, 2023 WL 2214884, at *1; *Synkloud*, 2022 WL 1046261, at *2; *see also Wiesel*, 2021 WL 5038764, at *2 (noting benefit to district court from PTO's reexamination whether claim is canceled (and eliminated from trial) or survives (with PTO's expert view on claim)).  Even if all claims survive, the petitioner "will be estopped from challenging the validity of the claims on any ground that was raised or reasonably could have been raised during the IPR proceedings." *Rovi Guides, Inc. v. Comcast Corp.*, No. 16-CV-9278, 2017 WL 4876305, at *3 (S.D.N.Y. Oct. 27, 2017).

If the PTAB institutes IPR for either of Mastercard's two IPR petitions, the issues will be simplified under all potential outcomes.  *See, e.g.*, *Molo Design*, 2022 WL 2135628, at *2 (PTAB's review could either eliminate need for trial by canceling claims, or at least provide expert opinion and clarify scope of any upheld claims); *Synkloud*, 2022 WL 1046261, at *2 (IPR would either "rend[er] claims moot or narrow[] the issues"); *Rovi Guides*, 2017 WL 4876305, at *3 ("[C]laims at issue will be simplified, regardless of the outcome of IPR, because the PTAB's decisions will be binding on this Court" (first citing 35 U.S.C. § 315(e); then citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013))).

Here, Mastercard's petitions challenge all 33 claims of the '171 Patent, contending that they are invalid on the grounds of either anticipation, *see* 35 U.S.C. § 102, or obviousness, *see id.* § 103, based on the submitted prior art.  (*See* ECF No. 44-1 at 36-84; ECF No. 44-2 at 30-86.)  If the PTAB agrees in whole or in part, IPR could moot the entire action, or at least narrow the issues by invalidating certain claims. *See Unicorn Global, Inc. v. DGL Grp., Ltd.*, No. 21-CV-1443, 2023 WL 2019092, at *1 (E.D.N.Y. Feb. 15, 2023) ("[A] stay will invariably simplify the issues in this case.  Because [defendant] is challenging all of the claims in the sole patent in the

case, a PTAB cancellation would moot the entire case.  And even if the PTAB canceled some of the claims in the patent, the scope of the litigation would be narrowed."); *Synkloud*, 2022 WL 1046261, at *3 (factor favored pre-institution stay where defendant "filed petitions on all five of the asserted claims in [the] action"); *Karl Storz Endoscopy-Am., Inc. v. Synaptive Med., Inc.*, No. 17-CV-5607, 2018 WL 11220832, at *1 (S.D.N.Y. Aug. 8, 2018) (IPR proceedings "highly likely to simplify the issues in question" and "may moot [the case] altogether" where PTAB instituted IPR of every claim of challenged patent); *Goodman*, 2017 WL 5636286, at *2 (factor weighed in favor of stay when IPR could potentially moot entire case or limit claims at issue). And even if the PTAB upholds all of the '171 Patent's claims, this Court would still benefit from the PTO's expert guidance, and Mastercard would be estopped from arguing that the claims are invalid on any ground that Mastercard raised or could have raised during IPR.  *See, e.g.*, *Molo Design*, 2022 WL 2135628, at *2; *Synkloud*, 2022 WL 1046261, at *2; *Rovi Guides*, 2017 WL 4876305, at *3.

Additionally, the PTAB's published end of year statistics suggest that it is more likely than not that IPR will be instituted here.  *See generally* PTAB Trial Statistics FY23 End of Year Outcome Roundup IPR, PGR, at 6 (PTAB instituted 66% and 67% of petitions filed in fiscal years 2022 and 2023, respectively), 8 (PTAB instituted 70% of "Electrical/Computer" technology-based petitions in fiscal year 2023).[3]  Congress developed IPR to promote the "policy goals of streamlining the patent process in general and in focusing patent enforcement litigation, thus limiting costs for all parties and preserving judicial resources."  *Am. Tech.*

---

[3] Mastercard directs the Court to the PTAB's reported statistics for fiscal year 2022.  (*See* ECF No. 43 ("Ds' Mem.") at 6.)  The Court takes judicial notice of the PTAB's FY23 End of Year AIA round up (uspto.gov) (last accessed Nov. 6, 2023), which includes institution rates for fiscal years 2022 and 2023.  *See generally Smith v. Fricke*, 635 F. Supp. 3d 152, 165 (N.D.N.Y. 2022).

*Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544, 2019 WL 365709, at *2 (E.D.N.Y. Jan. 30, 2019).  Permitting the PTO to exercise its expertise in this proceeding before expending "considerable judicial resources" appears to be the better course, aligned with Congress' goals for the IPR process.  *See Synkloud,* 2022 WL 1046261, at *4; *Nike*, 2023 WL 2214884, at *1.[4]

OV Loop argues that an instituted IPR will not simplify the issues because IPR is "extremely limited compared to the issues in this case." (*See* OV's Opp. at 14.)  OV Loop contends, for example, that Mastercard will raise in this case invalidity challenges beyond anticipation and obviousness, which are the two infringement defenses that the PTAB can address during IPR, and that it therefore weighs against a stay that the scope of litigation and IPR are "largely non-commensurate." (*See id.*)  This argument is not persuasive.  While IPR will not address every possible defense that Mastercard may raise in this action, an instituted IPR will likely narrow issues, or at least provide the Court with the PTO's expertise to guide the analysis for the overlapping issues that remain, given that Mastercard's petitions challenge all of the '171 Patent's claims.  *See Nanobebe U.S. Inc. v. Mayborn (UK) Ltd.*, No. 21-CV-8444, 2023 WL 4993642, at *3 (S.D.N.Y. Aug. 4, 2023) (factor favors stay when instituted IPR proceeding will cover "all of the claims at issue"); *Synkloud*, 2022 WL 1046261, at *3 (factor weighed in favor

---

[4] PTAB will institute IPR if "there is a reasonable likelihood" that Mastercard will prevail with respect to at least one of the '171 Patent's claims.  *See* 35 U.S.C. § 314(a).  But the Court need not determine whether IPR will be granted, and only comments that the PTAB's published statistics suggest that the possibility of institution is more likely than not.  *See Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 13-CV-633, 2014 WL 201965, at *8 (N.D.N.Y. Jan. 15, 2014) ("I decline to make any determination regarding the likelihood that the IPR petitions may be instituted, other than to acknowledge the statistics made available by the PTO, which, at least for now, suggest that it is more likely than not that IPR will be instituted."); *see also Nike*, 2023 WL 2214884, at *2 (PTAB's published 2022 trial statistics indicated that IPR institution would be "arguably likely" for at least some challenged claims).

of pre-institution stay because "[d]efendant has filed petitions on all five of the asserted claims in this action").

Of course, the PTAB has not yet decided whether it will institute IPR. While some decisions in this district have found that the simplification-of-issues factor cannot be met until IPR has been instituted, *see Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 13-CV-633, 2014 WL 201965, at *5-6 (N.D.N.Y. Jan. 15, 2014); *Grecia*, 2017 WL 11566955, at *2; *CDX Diagnostics*, 2014 WL 2854656, at *3, more recent decisions have concluded that a pre-institution posture does not mean a stay is inappropriate, *see Nike*, 2023 WL 2214884, at *2 (waiting for IPR institution "does not appear to be the majority position in this Circuit"); *Slingshot Printing LLC v. Canon U.S.A., Inc.*, No. 22-CV-123, 2022 WL 17361232, at *4 (E.D.N.Y. Dec. 1, 2022) ("[S]everal recent Eastern District cases have addressed this factor and favor imposition of a stay" even before IPR instituted); *Molo Design*, 2022 WL 2135628, at *2 ("[S]everal courts recognize that the delay in waiting for the initial PTAB decision is on balance, prudent in light of the prospect of benefiting from the PTO's unique expertise on a highly complex topic"); *Synkloud,* 2022 WL 1046261, at *4 (pre-institution stay aligned with IPR's goal "to streamline the patent system and eliminate counterproductive litigation costs").[5]

---

[5] The Federal Circuit has not expressed an opinion on whether the better practice is to rule before PTAB institutes post-grant review, to wait for PTAB to institute review, or to deny the motion without prejudice to refile after review is instituted. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1315-16 (Fed. Cir. 2014).

OV Loop cites to several decisions outside of the Second Circuit for the proposition that a stay should not be granted if IPR is not yet instituted. (*See* OV's Opp. at 6-8 (collecting cases).) These nonbinding decisions do not persuade me, given the more recent trend by courts within the Second Circuit. And in any event, courts from other circuits have granted pre-institution motions to stay. *See, e.g., Scramoge Tech., Ltd. v. Volkswagen Grp. of Am., Inc.*, No. 22-CV-10730, 2022 WL 17616451, at *2 (E.D. Mich. Dec. 12, 2022) (granting pre-institution stay because of the "early juncture in the case given the unique facts"); *NST Global, LLC v. Sig Sauer Inc.*, No. 19-CV-792, 2020 WL 1429643, at *4 (D.N.H. Mar. 24, 2020) (granting stay

Thus, while this factor may not weigh as strongly in favor of a stay as it would had IPR already been instituted, *see VirtualAgility Inc.*, 759 F.3d at 1316; *Kannuu*, 2021 WL 195163, at *9, on balance, the Court finds that this factor weighs in favor of a stay.

### 2. A Stay Will Not Unduly Prejudice OV Loop

To determine whether Plaintiff will suffer undue prejudice resulting from a stay, the Court considers, among other things, the following four subfactors: "(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Molo Design*, 2022 WL 2135628, at *3; *see Slingshot*, 2022 WL 17361232, at *2. "Mere delay does not constitute prejudice." *Molo Design*, 2022 WL 2135628, at *3; *see Rensselaer Polytechnic*, 2014 WL 201965, at *4.

#### a. Timing of Request for Review and Request for Stay

Mastercard filed the IPR petitions around 6 months after being served with the complaint, (*see* ECF Nos. 20, 21; Tempesta Decl. ¶¶ 2-3), and well before the statutory deadline of March 10, 2024, *see* 35 U.S.C. § 315(b) ("An *inter partes* review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent."). The weight of authority in this circuit counsels in favor of granting a stay when a party files its IPR petition(s) within the statutory deadline. *See, e.g.*, *Molo Design*, 2022 WL 2135628,

---

when PTAB would decide whether to institute IPR within four months and proceeding with litigation would involve several labor-intensive steps, and noting that District of Delaware's *per se* rule against granting pre-institution stays is "hardly universal") (collecting cases); *Harper Eng'g Co. v. FACC Operations GmbH*, No. 20-CV-510, 2022 WL 356735, at *2 (S.D. Ala. Jan. 18, 2022) (noting benefits of PTO's expertise and that "[i]t is not uncommon for courts in the Eleventh Circuit to stay cases before the PTAB has decided whether to institute [IPR]") (collecting cases).

at *3; *Kannuu*, 2021 WL 195163, at *10; *Rovi Guides*, 2017 WL 4876305, at *4.  Mastercard filed this motion the same day as the IPR petitions.  (ECF No. 42 (filed on Sept. 6, 2023); Tempesta Decl. ¶¶ 2-3 (attached IPR petitions filed on Sept. 6, 2023).)  OV Loop acknowledges that Mastercard timely filed the IPR petitions and this motion.  (*See* OV's Opp. at 3 n.2.).  Accordingly, the Court finds that these two subfactors weigh in favor of a stay.

                b.        Status of the Review Proceedings

As discussed above, courts are divided on whether it is premature to grant a stay before the PTAB has instituted IPR.  But several recent Southern and Eastern District cases have assessed this factor and found it appropriate to impose a stay before IPR institution.  *See, e.g.*, *Nike*, 2023 WL 2214884, at *2 (collecting cases); *Molo Design*, 2022 WL 2135628, at *3-4 (subfactor weighed in favor of stay because three-month delay before PTAB decided to institute IPR would not prejudice plaintiff, and if IPR instituted, there would be a "substantial chance" of simplifying litigation); *Synkloud*, 2022 WL 1046261, at *4 ("[T]he better course is to allow the PTO to apply its expertise to these proceedings before considerable judicial resources are expended."); *Slingshot*, 2022 WL 17361232, at *4 (same).

Here, the PTAB will determine whether to institute IPR no later than March 6, 2024 – six months after the IPR petitions were filed, *see* 35 U.S.C. § 314(b), and less than four months from the issuance of this opinion.  If the PTAB grants IPR, a final PTAB decision would be due in March 2025, or September 2025 if granted an extension "for good cause shown."  35 U.S.C. § 316(a)(11); *see* 37 C.F.R. § 42.100.  While this delay is arguably significant, it is not so long as to eliminate the benefit of the potential for the PTAB decision to drastically simplify the issues in this litigation.  *See Molo Design*, 2022 WL 2135628, at *2-3.  Moreover, "denying a stay based on this factor may lead to duplication of labor-intensive stages of discovery including additional

written discovery and/or motions." *Synkloud*, 2022 WL 1046261, at *4. Thus, the Court finds that this subfactor also weighs in favor of granting a stay.

###### c.      OV Loop and Mastercard's Relationship

Finally, the Court considers the parties' relationship in determining if a stay would cause undue prejudice. "An important factor in determining if a stay will prejudice the plaintiff is whether the parties are direct competitors because there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *CDX Diagnostics*, 2014 WL 2854656, at *4; *see VirtualAgility Inc.*, 759 F.3d at 1318 ("[C]ompetition between parties can weigh in favor of finding undue prejudice."). Determining whether the patentee will face undue prejudice focuses on whether there is a "need for expeditious resolution of [the] claim." *VirtualAgility Inc.*, 759 F.3d at 1318.

OV Loop contends that it is in direct competition with Mastercard, (*see* OV's Opp. at 2; *see id.* at 15-20; ECF No. 47 ("Graylin Decl.") ¶11; Compl. ¶¶ 18-19, 69-73), which Mastercard disputes, (*see* ECF No. 43 ("Ds' Mem.") at 10; ECF No. 49 ("Ds' Reply") at 6-8). OV Loop's assertion is not borne out by the allegations in OV Loop's own complaint or its opposition and accompanying documents. *See Karl Storz*, 2018 WL 11220832, at *1 ("courts require evidence to evaluate claims that direct competition will result in prejudice from a stay"). First, OV Loop quotes language from Mastercard's SEC filings, which states that Mastercard "face[s] a number of competitors both within and outside of the global payments industry" including "increasing competition from alternative payments systems and emerging payments providers," many of which "have developed payments systems focused on online activity in e-commerce and mobile channels," for example, "digital wallet providers (such as Paytm, PayPal, Alipay and Amazon)."

11

(OV's Opp. at 16 (quoting Mastercard Inc.'s Dec. 31, 2022 Form 10-K at 20-21).)  OV Loop quotes additional language from Mastercard's filing that states "[d]isintermediation from stakeholders both within and outside of the payments value chain could harm our business . . . . [T]hey could develop platforms or networks that disintermediate us from digital payments and impact our ability to compete in the digital economy."  (*Id.*; *see* ECF No. 46-5 at 3-6 (excerpt from Mastercard Inc.'s Dec. 31, 2022 Form 10-K).)

OV Loop, were it to successfully develop its product, might fall into the category of a competitor who could "disintermediate – *i.e.,* render irrelevant," (Compl. ¶ 18) – Mastercard's "existing business model," (*id.*).  But OV Loop omits other language from those SEC filings that describe Mastercard as "a technology company in the global payments industry" that "operate[s] a multi-rail payments network that provides choice and flexibility for consumers, merchants and [its] customers" and "offer[s] integrated payment products and services using [its] family of well-known and trusted brands."  *See* Mastercard Inc.'s Dec. 31, 2022 Form 10-K at 6 (available at ma-20221231 (sec.gov)).   While there may be some level of competition between the two, Mastercard appears to be a much larger player in an overall larger market, and the two do not appear to be "primarily marketplace competitors."  *See Rovi Guides*, 2017 WL 4876305, at *5.

Indeed, as OV Loop's complaint and motion papers indicate, it does not have a market-ready product today.  (*See* OV's Opp. at 17 ("OV Loop is building such a super app for the U.S. market."); Compl. ¶ 44 ("Mr. Graylin has been leading OV Loop directly, as its C.E.O., since 2018, to create a 'super-app,' including a multi-card digital wallet functional at 'bricks and mortar' (retail stores) POS terminals."), ¶ 47 ("Mr. Graylin has been building OV Loop for nearly 5 years"); Graylin Decl. ¶ 7 ("OV Loop has been striving to build a super-app platform that is universal across devices, POS and tender types."), ¶ 8 ("Given the dominance Mastercard

and Visa have in the domestic payment business, including credit and debit cards, any super-app here will need to first be accessible to domestic credit and debit card holders."), ¶ 10 ("We had a lot of interest in our OV Valet and OV Loop app solution with over 1,000 early adopters in the beta program, but their biggest complaint was not being able to get access to the cards / tokens of their banks including Mastercard banks. . . .").)  Based on these documents, OV Loop's "super-app" is still in development and has not yet entered the global payments market space.  In fact, OV Loop suggests that it cannot enter the market without access to Mastercard's certifications and Mastercard-branded credit cards.  (*See* Compl. ¶ 73 ("The approval process and certification delays have already caused an estimated two and a half years of delay to market").  That the patentee lacks a competing product weighs against finding undue prejudice. *See Nike*, 2023 WL 2214884, at *3; *Wiesel*, 2021 WL 5038764, at *4.

Finally, even if the parties were currently competitors, OV Loop would not be unduly prejudiced by a stay.  OV Loop filed this action on March 1, 2023 – several years after it became aware of MasterCard's allegedly infringing activity, which apparently was in 2018.  (*See* Compl. ¶¶ 60-67 (Mastercard Cloud-Based Payment standards, which any party wishing to use Mastercard data in a mobile wallet must meet, infringe OV Loop's patent); *id.* ¶¶ 68-71 (from 2018 to 2022, OV Loop communicated with Mastercard regarding connecting Mastercard to OV

Loop's proposed super-app).)[6]  Nor did OV Loop seek a preliminary injunction.[7]  Delays in filing an infringement suit and failing to seek an injunction – while not dispositive, *see VirtualAgility Inc.*, 759 F.3d at 1319 – "give reduced weight to any claims of undue prejudice," *Nike*, 2023 WL 2214884, at *3; *see VirtualAgility Inc.*, 759 F.3d at 1319 (plaintiff's unexplained delay for almost a year in filing the patent infringement case – as well as plaintiff declining to seek a preliminary injunction because it "was not worth the expense" – weighed against claim that plaintiff would be unduly prejudiced); *Synkloud*, 2022 WL 1046261, at *3-4 (plaintiff's more than 3.5 year delay to initiate suit and failure to seek preliminary injunction weighed in favor of stay).

Moreover, even if OV Loop were already in the market, its own evidence suggests that others – such as PayPal, Alipay and Amazon – are ahead of it in competing with Mastercard, which reduces any potential loss of market share.  *See Synkloud*, 2022 WL 1046261, at *3

---

[6] OV Loop argues that its multi-year delay to filing suit is justified because "its business is seriously hampered by lack of certification from Mastercard," "it tried hard to get that certification," and suing the entity the certification of which it needed was a last resort.  (OV's Opp. at 19 n.5.)  That OV Loop may have had a business reason not to sue does not change the fact that it apparently was willing to tolerate a years-long delay in enforcing its patent.  Further, its argument that it needed Mastercard's assistance to market its product cuts against its contention that Mastercard is a direct competitor.  OV Loop's other arguments sounding in antitrust, (*see* OV's Opp. at 3, 18-20), are irrelevant to this patent infringement action and the Court does not address them.

[7] OV Loop contends that it did not seek a preliminary injunction ("PI") because it did not want to waste its or the Court's resources, given that "critical infringement related documents, including key Mastercard specifications, . . . are nonpublic." (OV's Opp. at 19 n.5.)  If the decision was based on resources, it again might be a valid business decision, but one that would cut against its argument that any delay is unduly prejudicial.  *See VirtualAgility Inc.*, 759 F.3d at 1319.  If the decision was based on an evaluation that OV Loop could not succeed on a PI motion, the Court naturally agrees it would be inappropriate for a party to bring such a motion if the party believes it cannot win, but as Mastercard highlights, (*see* Ds' Reply at 7 n.2), it raises the question as to the strength of OV Loop's infringement claims if the "critical" documents are unavailable to it.

("Being in a multi-competitor market reduces the risk of loss of market value."). Furthermore, the stay would not diminish any potential monetary damages that OV Loop might recover in this patent infringement suit – "it only delays realization of those damages." *VirtualAgility Inc.*, 759 F.3d at 1318. To the extent that OV Loop argues otherwise, its "conclusory allegation of competitive financial harm stands in stark contrast to [its] failure to seek preliminary injunctive relief at the case outset." *Unicorn Global*, 2023 WL 2019092, at *3.

And if OV Loop is correct that the PTAB will not institute IPR, the short four-month delay in this litigation would not cause OV Loop any irreparable harm under these circumstances, *see, e.g.*, *Nike*, 2023 WL 2214884, at *3; *Molo Design*, 2022 WL 2135628, at *4, *i.e.*, where OV Loop waited more than four years to file this action, and only after it turned to litigation "as a last resort" to obtain access to Mastercard's network, (*see* OV's Opp. at 19 n.5). Therefore, even if OV Loop and Mastercard are considered to be competitors, this subfactor weighs in favor of granting a stay. Accordingly, after analyzing all four subfactors, the Court finds that OV Loop will not be unduly prejudiced by a stay.

Having considered the above factors under the totality of the circumstances, the Court finds that a stay pending the PTAB's IPR is warranted.

Mastercard requests a stay "until final non-appealable decisions are issued in the IPRs for the '171 Patent." (Ds' Mem. at 11.) The parties may appeal the PTAB's decision to the Federal Circuit, *see* 35 U.S.C. § 329, which would likely take an additional one to two years to resolve the appeal, *see Novartis*, 582 F. Supp. 3d at 48; *Intellectual Ventures II L.L.C. v. JP Morgan Chase & Co.*, No. 13-CV-3777, 2014 WL 10919562, at *5 (S.D.N.Y. Aug. 11, 2014). If the PTAB institutes IPR, and its decision is then appealed, Mastercard's requested stay could likely extend well into 2026. The decision to "stay proceedings pending a final resolution of IPR

15

proceedings appealed to the Federal Circuit" is within the Court's discretion. *See Andrea Elecs. Corp. v. Apple Inc.*, No. 16-CV-5220, 2019 WL 3712120, at *1 (E.D.N.Y. Aug. 6, 2019). But given that PTAB has yet to institute IPR, and the uncertain timeline regarding the full IPR process at this moment, the Court declines to grant a stay of Mastercard's requested duration. If IPR is instituted, the parties can revisit whether to continue the stay after the PTAB issues its final decision regarding Mastercard's petitions or at another appropriate time.

### III. CONCLUSION

For the foregoing reasons, Mastercard's motion to stay the proceedings is GRANTED for the duration of any IPR proceedings before the PTAB regarding the '171 Patent. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 42), and to stay this action. The parties shall file a joint status letter within seven (7) days of the PTAB's decision whether to institute the IPR petitions.

**SO ORDERED.**

Dated: November 16, 2023
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.